G. T. LLEWELYN, Admr. of the Estate of Martin v. Cozard, Deceased, Respondent, v. WILLIAM B. COZARD, Appellant.

St. Louis Court of Appeals. Argued and Submitted October 9, 1919. Opinion Filed November 4, 1919.

CONTRACTS: Support: Breach of Contract to Support: Evidence. In an action for breach of contract for plaintiff's support, etc., evidence reviewed and *held* that plaintiff did not make out his case and that an instruction to that effect, asked by defendant, should have been given.

Appeal from the Circuit Court of Clark County.—*Hon. N. M. Pettingill*, Judge.

REVERSED.

*J. A. Whiteside* for appellant.

*C. T. Llewellyn* for respondent.

REYNOLDS, P. J.—The petition in this case contains three counts. In the first count it is set up that plaintiff was of the age of seventy-nine years; that on or about March 21, 1908, he and his half-nephew, William

B. Cozard, appellant here, made and entered into a contract and agreement whereby the defendant contracted and agreed to provide, give and furnish' plaintiff with a good home and comforts of life so long as plaintiff might live, and that the plaintiff, in consideration of the promise, agreement and undertaking made by defendant, as aforesaid, contracted and agreed to purchase, pay for and have deeded to the defendant a tract of about fifteen acres of land adjoining the lands of defendant, and that defendant undertook and then and there faithfully promised plaintiff to perform and fulfill the agreement in all things on the defendant's part and behalf to be performed; that plaintiff has already since the time of making the agreement performed and fulfilled all things on his part and behalf in the agreement to be performed and did afterwards, on March 21, 1908, purchase from one Cortez Johnson, Jr., fifteen acres of land adjoining the lands of defendant, paying for the same the sum of $301.50 (afterwards amended t oread $401.50), and caused and procured the same to be deeded and conveyed to defendant; that defendant, contriving and wrongfully intending to injure plaintiff, did not and would not perform the contract and agreement or his promise or undertaking, but craftily and subtly deceived plaintiff in this, to-wit: that defendant, after acquiring and obtaining the fifteen acres of land purchased for him by plaintiff and after defendant had soldl the same and appropriated and converted the proceeds to his own use, and for the purpose of driving plaintiff away, defendant, in conjunction with his wife, began systematically, craftily and persistently "to devil, aggravate, annoy and exasperate plaintiff; to censure, criticise and abuse plaintiff by tongue lashing, tormenting and using to and toward plaintiff vile, indecent and insulting language, and by denying the contract and agreement made as aforesaid with plaintiff, and by claiming that plaintiff owed defendant $1000, so as to render the condition of plaintiff intolerable, to destroy his peace and comfort and drive him away from the home of defendant." That

the acts and conduct of defendant have deprived plaintiff of a good home, and defendant has failed, refused and neglected to furnish and provide plaintiff a good home as long as he might live, as romised and agreed.

The second count was for money loaned on a note, the third for $401.50, charged to have been paid out at defendant's request,

There is a general denial by way of answer to the first and third counts and plea of payment as to the second.

On a trial before the court and jury, there was a verdict in favor of defendant on the second and third counts, but for the plaintiff and against defendant on the third count, in the amount of $401.50. From this judgment defendant has duly appealed. Plaintiff died January 21, 1918, and the cause was revived in the name of his administrator, who duly appealed.

Plaintiff's own account of the transaction, summarized, is that defendant was his nephew; that he (plaintiff) lived with defendant ten years and that defendant always told plaintiff that he would have a place in his home; that plaintiff bought a piece of land from one Cort, Johnson at $27 an acre, telling Johnson he wanted a warranty, and said, ''I expect to make Ben (his nephew, the defendant) a home as long as I live and to save trouble and expense hereafter we will make the deed to him and it was made.'' Plaintiff paid $401.50 for the land. Defendant said to plaintiff, ''You will have a home as long as I live;'' told defendant that he, plaintiff, was getting old, and wouldn't want defendant to have any trouble over what plaintiff had; did everything to make everything comfortable; ''thought I would have a home as long as I lived. If I hadn't been promised a home I wouldn't have bought the land.'' Plaintiff worked when he stayed at defendants —cut brush, hauled and shucked corn; was seventy-nine years old and had no family; defendant told him not to work so hard that he would

have a home as long as he lived. Defendant sold a part of the land.

On cross-examination plaintiff testified that he lived with defendant ten years; could not tell when he left them; it was about three years ago; left on account of "his woman;" it may have been only two years when he left; told them he was going away to stay and when he came back "they met him and wanted him to go home with them." The next to the last time he left, defendant wanted him to stay; "when I spoke to Johnson about making the deed I told him I expected a home with Ben as long as I lived. Ben was not present then. I never had a contract with Ben about the land."

This is the version of the testimony of plaintiff as in appellant's abstract.

According to respondent's abstract, plaintiff testified that he lived with defendant ten years and defendant was always telling him not to have another home; that he would always have a place there; bought the land; defendant said he would like to have it but was not able to buy. "I told him I would buy it." Asked what was said at that time, that is at the time of purchasing the land, about having a home, plaintiff answered, "Ben said, 'You will have a home as long as you live.' I told him I was getting old and wouldn't want him to have any trouble over what I had."

"Q. If you hadn't been promised this home you wouldn't have bought the land. A. I will be eighty years old if I live to the third day of next May.

"Q. This understanding about giving you a home, did you have a conversation about it more than once? A. Frequently. He said, 'Do not work so hard, you have a home as long as you live.'"

On cross-examination, plaintiff was asked,

"You never had a contract with defendant about this land? A. He told me I could have a home as long as I lived.

"Q. He never told you that to get this land? A. I know it.

"Q. You never had a contract? A. Yes, if a word is—

"Q. When? A. After he told me not work so hard. And he told me to sit by the fire.

"Q. He wasn't saying anything to you about this land? A. No, sir; only when I bought the land."

This is substantially the testimony of plaintiff himself, as brought before us by the respective counsel. There was testimony to the effect that while living with his nephew plaintiff had occasionally done a little work, grubbing, etc., but always at his own instance and without being required to do so by defendant; that when he first came to live with defendant his clothing was so insufficient that defendant bought him a suit of clothes. It appeared that at the time of the purchase of this land, which was on March 21, 1908, plaintiff had about $1500 in bank and drew on that to pay for the land. There is testimony to the effect that during all the time he was living with his nephew he was treated with kindness and consideration, and paid nothing to defendant for lodging, board or nursing. There is no testimony as to what was the immediate cause of plaintiff leaving the home, beyond the statement that plaintiff left "on account of his woman," evidently meaning defendant's wife. There is testimony to the effect that defendant had asked plaintiff to return to the home, and there is no testimony tending to show that at any time defendant denied plaintiff a home or drove him away. Defendant denied that there was ever any contract or understanding between himself and plaintiff as to the purchase of the land by plaintiff and the placing of title in defendant. Defendant was not present when the purchase was made; his uncle told him he was going to buy the land and give it to him for what defendant and his wife had done for him. Plaintiff first left the home in 1912 or 1913, about five years after the purchase.

Reading all the testimony in the case, we are unable to find sufficient in it to justify the verdict of the jury. As the action is at law we cannot treat it as one to establish a resulting trust. It proceeds on the theory that plaintiff had paid out money for the use of defendant, investing it in land, the title to which plaintiff had caused to be put in defendant, on the understanding between himself and defendant that plaintiff would have his home with defendant during his life; that on account of the acts of defendant and his wife, plaintiff had left the home, and that defendant having sold the land, defendant is liable to him for the money he had paid for it: in brief, a failure of the consideration.

There is not a particle of testimony in the case to show that either the defendant or his wife were in fault or by their own acts had driven plaintiff from the home. On the contrary, there is evidence, even by plaintiff himself, tending to show that he had lived with defendant for over ten years; that at all times defendant was entirely willing, even anxious, to have plaintiff reside on the farm with the rest of the family. His leaving appears to have been entirely of his own volition, without any contributing cause whatever on the part of defendant; in fact, plaintiff does not pretend to claim any bad treatment on the part of defendant; does not pretend to say that defendant drove him from the home or refused to let him live there. At most, it creeps out, not from the testimony of plaintiff himself, but from what he had said to other parties after he left, that he and defendant's wife had had some quarrels. This, in itself, can hardly be charged to defendant to the extent of depriving him of the title to the land which plaintiff had voluntarily caused to be taken in his name and for which plaintiff had voluntarily paid. All the outside witnesses testify that plaintiff was always treated with kindness and consideration; was nursed through a long sickness by defendant and his wife, and lived as they did, and no testimony sustaining plain-

tiff's averments of any hostile or abusive acts or language of the wife or of defendant is in the record.

If we are to assume that the understanding that plaintiff was to have a home with the defendant during his life, was arrived at before plaintiff purchased the land and took the deed for it in the name of his nephew, the defendant, and was the consideration on which plaintiff paid $401.50 for the land, then, at most, there is a partial failure of consideration, for defendant ordinarily was entitled to pay for the time that he furnished a home to plaintiff, and that was a period of some ten years or more, although he never claimed pay. At most, therefore, it would be a case of partial failure of consideration; but even this is not the fact here, for the evidence is conclusive that the act of leaving the home was the voluntary act of plaintiff himself and that, as far as the evidence showed, defendant did not either refuse to furnish him a home or commit such acts as would justify plaintiff in abandoning that home.

We are clearly of the opinion that plaintiff did not make out his case and that the instruction to that effect, asked by defendant, should have been given.

The judgment of the circuit court on this first count of the petition and in favor of plaintiff is reversed. *Allen* and *Becker, JJ.*, concur.